United States District Court
Southern District of Texas
**ENTERED**
March 01, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RENEE F.,[1] | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:22-cv-04237 |
| | § | |
| MARTIN O'MALLEY,[2] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Renee F. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g).[3] Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a motion for summary judgment, ECF No. 9, and the Commissioner

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The Court substitutes in the name of the current Commissioner as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[3] On February 7, 2023, based on the parties' joint consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 5. While only the Commissioner's consent appears on the docket, ECF No. 4, Plaintiff has not objected to transfer. *See Roell v. Withrow*, 538 U.S. 580, 590 (2003) (allowing consent to Magistrate Judge jurisdiction to be implied by conduct); *PNC Bank, Nat'l Ass'n v. Ruiz*, 989 F.3d 397, 400 (5th Cir. 2021) (noting that consent by conduct will be implied absent a party's "express refusal to consent").

1

filed a response, ECF No. 13, which the Court treats as a cross-motion for summary judgment. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the Administrative Law Judge's ("ALJ") decision "is not supported by substantial evidence and is the result of legal errors." ECF No. 9 at 4, 13. The Commissioner counters that "the ALJ followed the correct legal standards," and substantial evidence supports the ALJ's decision. ECF No. 13 at 10. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ properly determined Plaintiff was not disabled during the relevant period. Plaintiff's motion for summary judgment is denied, and the Commissioner's cross-motion is granted.

## I.    BACKGROUND

Plaintiff was 53 years old on her alleged disability onset date. R. 508.[4] Plaintiff has completed two years of college, and she previously worked as a receptionist and information aide. R. 125, 512-13. Plaintiff alleges a disability onset date of May 1, 2017. R. 508. Plaintiff claims to suffer from degenerative disc disease, carpal tunnel syndrome, migraines, and several other medical conditions. R. 511.

On April 2, 2019, Plaintiff filed an application for disability insurance benefits under Title II of the Act.[5] R. 437-38. Plaintiff based her application on chronic back

---

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 5.

[5] For Plaintiff's disability insurance benefits, the relevant period is May 1, 2017—Plaintiff's alleged onset date—through December 31, 2022—Plaintiff's last insured date. R. 16, 508. The Court will consider medical evidence outside this period to the extent it demonstrates whether

pain and nerve damage from her carpal tunnel syndrome. R. 512, 553, 577. The Commissioner denied Plaintiff's claim initially, R. 132-40, and on reconsideration. R. 143-56.

Three administrative hearings were held before an ALJ where Plaintiff was represented by an attorney. R. 36, 82, 106. Plaintiff and a vocational expert ("VE") testified at each hearing. R. 36-37, 82-83, 106-07. After the first two hearings in 2020 and 2021, the ALJ issued unfavorable decisions, which the Appeals Council then vacated and remanded for further proceedings. R. 157-205. The third and final hearing took place on March 2, 2022. R. 36-81. The ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform light work with some moderate restrictions.[6] R. 19-20. The ALJ found Plaintiff not disabled and

---

Plaintiff was under a disability during this timeframe. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 25. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date. R. 135 (citing 20 C.F.R. §§ 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis, neuropathy, carpal tunnel syndrome, degenerative disc disease, fibromyalgia, and headaches. R. 18 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b), with some postural and environmental restrictions, including *inter alia* no more than: frequent handling, fingering, feeling, or reaching; frequent exposure to sustained concentrated amounts of dust, odors, fumes, or pulmonary irritants; and moderate noise. R. 19-20. At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a receptionist and referral info clerk as generally performed, but not as actually performed. R. 25 (citing 20 C.F.R. § 404.1565). The ALJ thus concluded that Plaintiff was not disabled. R. 26.

denied her request for benefits. R. 25-26. The Appeals Council denied Plaintiff's

request for review, upholding the ALJ's decision to deny benefits. R. 1-6.

Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II.   STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision

of the Commissioner that was made after a hearing in which the claimant was a

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript
> of the record, a judgment affirming, modifying, or reversing the
> decision of the Commissioner . . . , with or without remanding the cause
> for a rehearing. The findings of the Commissioner . . . as to any fact, if
> supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to

determining whether that decision is supported by substantial evidence on the record

as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*,

239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

"Substantial evidence" means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (quotations omitted). It is "more than a scintilla but less than a

preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold

for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial

evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (quotation omitted).

## III.    APPLICABLE LAW

### A.    Disability Insurance Benefits Under the Act.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. Applicants must prove "disability" to qualify for benefits. *Id.* § 423(d)(1)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)).

### B.    The Shifting Burden of Proof.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance

benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981).

The Commissioner applies a five-step sequential process to determine disability status. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014). The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.  ANALYSIS

Plaintiff raises six alleged errors on appeal.[7] ECF No. 9 at 2. In response, the Commissioner reframes the arguments into three broad issues: (1) whether the ALJ erred at step three, (2) whether the ALJ properly evaluated Plaintiff's subjective symptoms, and (3) whether substantial evidence supports the ALJ's finding. ECF

---

[7] Plaintiff contends the ALJ erred in: (1) failing to consider Plaintiff's headaches, (2) failing to call a medical expert to testify, (3) finding Plaintiff can perform past relevant work, (4) failing to include a sustainability finding, (5) substituting the ALJ's own opinion for that of a medical expert, and (6) determining Plaintiff's credibility. ECF No. 9 at 2. Plaintiff's motion is an almost word-for-word regurgitation of her briefing before the Appeals Council. R. 708-17. The briefing is at least updated with citations to the administrative transcript, but several references to the "Appeals Council" remain. *See* ECF No. 9 at 5, 8. Plaintiff further insists "[t]he record contains substantial evidence to refute the ALJ's finding" of no disability. *Id.* at 13. But that is not the correct standard. The Court will not reweigh the evidence on appeal, so long as more than a scintilla of evidence supports the Commissioner's decision. *See Brown*, 192 F.3d at 496; *Carey*, 230 F.3d at 135.

No. 13 at 4-10. The Court appreciates the Commissioner's attempt to organize and clarify the issues. Nonetheless, the Court will separately address each of the alleged errors Plaintiff raised, but only to the extent those arguments are adequately briefed. For the reasons stated below, the Court finds no error and substantial evidence supports the ALJ's decision. Further, Plaintiff has inadequately briefed and therefore waived many of her arguments.

> **A.    The ALJ Did Not Fail to Consider Plaintiff's Headaches, and Any Error Was Harmless.**

Plaintiff argues that the ALJ erred by not fully factoring in the impact of her headaches into the RFC determination. Courts review an ALJ's RFC determination for substantial evidence. *Perez*, 415 F.3d at 464. But arguments may nonetheless be waived where the party "fail[s] to adequately brief its arguments, and support them with facts, evidence, or applicable authority." *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019); *see also Vaught v. Astrue*, 271 Fed. App'x 452, 454 (5th Cir. 2008) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

Plaintiff concedes that the ALJ acknowledged her headaches as a severe impairment. ECF No. 9 at 4; R. 18. The ALJ then discussed and considered Plaintiff's sparse medical evidence of headaches. R. 20-21, 24. Although Plaintiff never mentioned headaches at the hearing, the ALJ still limited her RFC to "frequent exposure to . . . odors" and "moderate noise." R. 20. Yet, Plaintiff insists the ALJ

erred by not including limitations for "light sensitivity" or "strong smells." ECF
No. 9 at 4-5. Plaintiff cites no case law in support of this argument. The few citations
to the record—while indicating Plaintiff has previously reported headaches, R. 734,
817—do not support either proposed limitation. Plaintiff fails to identify relevant
supporting evidence, and the argument is further waived due to inadequate briefing.

But even assuming the ALJ somehow erred by failing to consider the effects
of light and smell on Plaintiff's headaches, any error was harmless. "Harmless error
exists when it is inconceivable that a different administrative conclusion would have
been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir.
2021). "[T]he burden of showing that an error is harmful normally falls upon the
party attacking the agency's determination." *Id.* (quoting *Shinseki v. Sanders*, 556
U.S. 396, 409 (2009)). While Plaintiff contends the ALJ erred by not incorporating
into the RFC "testimony that her headaches are also exacerbated by light sensitivity
and certain strong smells," ECF No. 9 at 4-5, Plaintiff offers no explanation how
such error was prejudicial. Nor does Plaintiff cite *where* in the record she provided
such testimony. The Court is not required to go digging through the record to find
evidence in support a party's motion.[8] Plaintiff failed to carry her burden to show
prejudice. Thus, even if the ALJ erred, any error was harmless.

---

[8] *See de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("Judges are not
like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955,
956 (7th Cir.1991))). Nevertheless, it appears Plaintiff is referring to an earlier hearing held on

**B.      The ALJ Was Not Required to Call a Medical Expert to Testify.**

Plaintiff argues the ALJ erred at step three by failing to call a medical expert to testify.[9] Plaintiff bears the burden of proof at step three. *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). While Plaintiff concedes that "an ALJ has discretion in obtaining a medical expert's testimony," she nonetheless insists that "the ALJ was required to obtain medical expert testimony" under the circumstances. ECF No. 9 at 5-6. Plaintiff primarily relies on a case from the District of Colorado for this argument. *Id.* at 6 (quoting *Welch v. Colvin*, No. 15-CV-00517-CMA, 2016 WL 106871, at *6 (D. Colo. Jan. 11, 2016)).

But Plaintiff's reliance on *Welch* is misplaced. Plaintiff quotes *Welch* out of context for the proposition that "an ALJ *must* obtain a medical expert's opinion . . .

---

April 16, 2021. R. 82-105. But the only relevant testimony is a brief exchange regarding any "sensitivity to sound, smells or light," where Plaintiff cursorily stated: "Yeah, no smell, I can't have any kind of perfumes around me, sound unbearable, and absolutely no light." R. 99. No further elaboration appears in the transcript, nor did Plaintiff testify that those environmental factors *trigger* headaches. Plaintiff even indicates to the contrary that her headaches are "caused by her sinus conditions." ECF No. 9 at 4; R. 817 (noting certain medications help "control the headaches from sinus congestion"). Plaintiff bears the burden of proving disability, and she fails to identify any evidence in support.

[9] Plaintiff also cites authority for the propositions that an ALJ has a duty to develop the record and "is unqualified to interpret raw medical data." ECF No. 9 at 5-6 (citing *Sims v. Apfel*, 530 U.S. 103, 111 (2000); *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *3 (W.D. Tex. Mar. 27, 2018)). But Plaintiff does not actually argue the ALJ erred in either respect. Because Plaintiff has inadequately briefed those issues by failing to provide any legal analysis, such arguments are waived. *See Vaught*, 271 Fed. App'x at 454.

when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing." 2016 WL 106871 at *6 (cleaned up). But as *Welch* continues, an ALJ may make the determination *whether* impairments meet or medically equal a listing "with or without the opinion of a medical expert." *Id.* (citing HALLEX § I-2-5-34).[10] The district court thus rejected the argument that an ALJ must "obtain the opinion of a medical expert during all hearings at step three of the sequential analysis" as "clearly not contemplated by the governing regulations." *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)). Instead, if "the ALJ did not consider a finding that Plaintiff's impairments met or medically equaled a medical listing," then "the ALJ was not required to obtain the opinion of a medical expert." *Id.*

That is precisely the situation here, the ALJ found no medical equivalency at step three. R. 19. Plaintiff concedes that she never alleged that she met or medically equaled any medical listing. ECF No. 9 at 5. Assuming *Welch* was controlling law, that case squarely rejects Plaintiff's argument. Because the ALJ was under no obligation to call a medical expert to testify, the ALJ committed no error. Moreover,

---

[10] HALLEX is the acronym for the Social Security Administration's Hearings, Appeals and Litigation Law Manual. *See Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015). The Fifth Circuit has held that violation of a HALLEX policy is only reversible error if it results in prejudice. *Id.* But even if the ALJ violated HALLEX, Plaintiff does not argue she was prejudiced, so any error is harmless. *See Keel*, 986 F.3d at 556. In this context, HALLEX § I-2-5-34(A) clarifies that an ALJ cannot "consider finding that the claimant's impairment(s) medically equals a listing" without a medical expert opinion, but an ALJ has discretion whether to obtain a medical expert opinion when determining "whether a claimant's impairment(s) meets a listed impairment(s)." Only a positive finding requires a medical expert.

Plaintiff never clarifies *which* medical listing her impairments allegedly met or medically equaled, so any error is harmless. *See Keel*, 986 F.3d at 556. Plaintiff has not met her burden to show error at step three.

### C.   The ALJ Considered Plaintiff's Ergonomic Accommodations.

Plaintiff argues that the ALJ failed to fully consider the fact that she required ergonomic accommodations in her past relevant work. At step four, the ALJ may consider ability to perform past relevant work as actually performed or as "generally performed in the national economy." *Bailey v. Saul*, 853 Fed. App'x 934, 938 (5th Cir. 2021). Plaintiff also bears the burden of proof at step four. *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). Plaintiff argues that she needed "a fully ergonomic workstation" to perform her prior receptionist work. ECF No. 9 at 6-7. A medical note from her doctor support these restrictions, and Plaintiff was temporarily placed on light duty to alleviate her back pain in June of 2015. R. 1267-68. Plaintiff concedes the cited evidence "pre-date[s] the relevant time period," but she insists that it is "indicative" of her issues. ECF No. 9 at 7. Plaintiff thus contends she is "no longer capable of sustained competitive work," because she can perform past relevant work "only as generally performed, with accommodations." *Id.*

But Plaintiff *again* cites no authority and supplies no legal analysis in support of her assertions of error.[11] Plaintiff's argument that the ALJ "completely ignores or

---

[11] Plaintiff only cites in passing SSR 83-10 for the proposition that Plaintiff "would be unable to

dismisses outright" the ergonomic accommodations, ECF No. 9 at 6, is also incorrect. Quite to the contrary, the ALJ discussed the 2015 ergonomic accommodations and work restrictions. R. 23-24. But the ALJ found that evidence unpersuasive because "it was rendered prior to the alleged onset date in 2017 . . . for work accommodation purposes, not Social Security disability purposes." R. 24. Nonetheless, the ALJ took that evidence into account at step four, noting that Plaintiff "needed accommodations in her past work to include an ergonomic chair." R. 25. The ALJ thus found Plaintiff "can only perform work as generally performed, not as actually performed." R. 25. Plaintiff apparently does not dispute this conclusion.[12] The ALJ fully accounted for Plaintiff's past accommodations at step

---

sustain the alertness and attention needed" to keep up with pace and maintain concentration. ECF No. 9 at 7. The referenced policy statement does note that "[s]emiskilled jobs may require alertness and close attention to watching machine processes." SSR 83-10, 1983 WL 31251, at *7 (1983). But Plaintiff does not argue that her prior work was semiskilled or involved "watching machine processes," nor does the record indicate that she ever operated heavy machinery. Because Plaintiff offers no explanation or analysis, these arguments are waived. *See Vaught*, 271 Fed. App'x at 454.

[12] Nor does the mere fact that Plaintiff required accommodations for her past work automatically preclude a finding of non-disability at step four. *See Hernandez v. Kijakazi*, No. SA-22-CV-01013-ESC, 2023 WL 6294192, at *4 (W.D. Tex. Sept. 27, 2023) ("That Plaintiff performed her previous position with accommodations, such as a desk with a sit-stand option, does not preclude that work from being considered past relevant work for purposes of evaluating disability and may demonstrate the necessary skills and ability to work at the substantial gainful activity level."). While the ALJ should also consider any relevant evidence before the alleged date of disability, *see Williams*, 575 Fed. App'x at 354, Plaintiff must still prove disability *during* the relevant period. Indeed, at the hearing, when asked by her attorney why she would be unable to perform sedentary work, Plaintiff complained about her "eyesight," being "always in pain," and not having "good gait," which made her simply "not a reliable person." R. 121-22. Plaintiff continued that she was unable to "pay for support to get better," and as a result she believed "there is nobody that is willing to hire me." R. 122. But Plaintiff never testified she could not perform sedentary work without her previous accommodations. As for Plaintiff's subjective claims of ongoing back pain and inability to sit for long periods while driving, R. 114-15, the ALJ found her testimony not wholly credible, as discussed further below.

four, and Plaintiff has not shown any error.

### D.      The ALJ Was Not Required to Include a Sustainability Finding.

Plaintiff argues that the ALJ erred by not considering whether she could perform light work on a sustained basis. ECF No. 9 at 8-9. Plaintiff relies on *Watson v. Barnhart*, which noted that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." 288 F.3d 212, 217 (5th Cir. 2002) (quotation omitted). But the Fifth Circuit has since clarified that "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Perez*, 415 F.3d at 465 (quotation omitted). "Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Id.*; *accord Castillo v. Barnhart*, 151 Fed. App'x 334, 335 (5th Cir. 2005) ("We have specifically rejected the contention that, under *Watson*, the ALJ must in every decision articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis.").

Plaintiff asserts error under *Watson* as the ALJ did not separately consider whether she "would be capable of holding down gainful activity for a significant time." ECF No. 9 at 9. Plaintiff insists that she "must spend too much time off task,

a 10-minute break every 15 minutes (40% time off task) and must regularly miss work for several days at a time due to severe headaches." *Id.* (citing R. 605, 734-36, 1267). But the Commissioner responds that "Plaintiff has not offered evidence to support her contention that she would be unable to maintain a job for any meaningful period of time" as required under *Watson*. ECF No. 13 at 7.

Plaintiff's argument is unpersuasive for three reasons. First, she never testified that her condition "waxes and wanes," so Plaintiff has not established the factual predicate for *Watson*. Instead, Plaintiff testified that every day was one of "those bad days where [she] can't get out of bed." R. 122. At the hearing, Plaintiff stated she "literally" was no longer able to type. R. 122-23. Plaintiff's representative thus asked the VE to restrict the ALJ's hypothetical to "occasional" handling and fingering. R. 129. But aside from the ergonomic workstation, Plaintiff posed no other questions to the VE at any point. R. 78, 104, 130. In other words, even Plaintiff's preferred hypothetical if accepted by the ALJ contained no waxing and waning conditions and her ability to work is subsumed in the RFC determination. *Perez*, 415 F.3d at 465.

Second, the evidence Plaintiff cites does not support the proposed restrictions. While Plaintiff has apparently complained of headaches to medical providers, R. 734, nowhere does that evidence indicate her headaches would preclude work for days at a time. As for needing breaks from sitting every 15 minutes, the record does indicate such temporary restrictions were put in place on April 13, 2015, until her

ergonomic workstation arrived. R. 1267. But Plaintiff cites nothing indicating those restrictions were tied to her *headaches*. Nor does she cite any medical opinion or evidence that her alleged back pain precluded her from *working* continuously during the relevant period, as opposed to just *sitting* for long periods of time.[13]

Third, Plaintiff's argument misstates the standard for disability. Plaintiff does not contest that she can perform light work comparable to her prior relevant work. Instead, Plaintiff argues that she "would be forced into performing the required duties regularly (8 hours per day, 5 days a week) which would undoubtedly exacerbate her symptoms." ECF No. 9 at 9. But simply because further work may eventually render Plaintiff disabled *in the future* does not mean that she was disabled during the relevant period. *See Cauthen v. Saul*, 827 Fed. App'x 444, 446 (5th Cir. 2020) (noting that claimant "must show that she meets the statutory definition of disability while her [social security benefits] application was pending," and therefore "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of the claim"). Plaintiff cites no authority for such a broad mandate. Regardless, because Plaintiff never established the necessary factual predicate under *Watson*, the ALJ did not err by failing to include a separate sustainability finding.

---

[13] The ALJ ultimately did not include any sitting restrictions in the RFC. R. 19-20. But Plaintiff apparently does not challenge this omission, instead arguing that "[e]ven if the Appeals Council [*sic*] partially agrees with the ALJ's ultimate conclusions," the ALJ violated *Watson*. ECF No. 9 at 8. Plaintiff has therefore waived any argument she may have had that the RFC is unsupported by substantial evidence due to inadequate briefing. *See Vaught*, 271 Fed. App'x at 454.

### E.     The ALJ Did Not Reject All Medical Opinions.

Plaintiff argues the ALJ erred "by rejecting all medical opinions" in the record and "failing to cite to a relevant medical opinion" pertaining to Plaintiff's "upper extremity limitations." ECF No. 9 at 9-10. Although Plaintiff clearly disagrees with the ALJ's conclusion, the Fifth Circuit has explained that this is *precisely* what an ALJ is supposed to do: "What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Indeed, using medical records to determine the RFC "is the sole responsibility of the ALJ." *Id.* at 602-03. The ALJ's responsibility is not to merely "adopt a specific physician's assessment," but instead "to interpret the medical evidence to determine a claimant's capacity for work." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (cleaned up).

But even assuming Plaintiff correctly states the law, the ALJ did not reject every medical opinion in the record. Instead, the ALJ found the state agency medical consultants' opinions "somewhat persuasive." R. 24. The reconsideration opinion found Plaintiff capable of light work with only mild manipulative limitations, such as "frequent fingering." R. 24, 152. The ALJ explicitly adopted those limitations "as stated by the [medical consultant] on reconsideration" and included them in the RFC. R. 24. The ALJ then extended those restrictions to include frequent handling, feeling,

and reaching, based on Plaintiff's subjective complaints of pain. *Id.* Because the ALJ did not reject but rather *adopted* the relevant parts of the medical opinions in the record, the Court sees no error.

The ALJ also discussed Plaintiff's hand surgery in late 2019, noting "that she was happy with the results," and post-treatment exams were "markedly better than earlier exams and showed that she had well-healed incisions with normal flexion and extension as well as abduction and adduction of all fingers." R. 22-23, 1349-58. But the ALJ noted Plaintiff "did not establish with any provider until one year after the surgery," and her post-surgery treatment records were "sporadic and limited . . . with exams that were largely unremarkable." R. 23. Aside from Plaintiff's testimony, nothing in the record shows greater manipulative limitations. Furthermore, Plaintiff cites no medical evidence in support of her arguments. ECF No. 9 at 9-11.

Plaintiff additionally argues that the ALJ improperly rejected the opinion of June Milligan, which a prior ALJ decision found to be persuasive. ECF No. 9 at 10-11. Plaintiff insists the ALJ's dismissal of "the findings of prior ALJ decisions as well as the opinion of medical professionals" thus "violates the holding of *Burgess v. Astrue*." *Id.* at 11. But there are three problems with Plaintiff's argument. First, *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), is a Second Circuit opinion and is not binding authority here. Second, the purported "quote" from *Burgess* that Plaintiff supplies, ECF No. 9 at 11, is little more than a Westlaw headnote, *see Burgess*, 537

F.3d at 130, and therefore no authority at all. Third, the source cited in *Burgess* for the proposition that an ALJ must "always give good reasons" for the weight afforded to a "treating source's medical opinion" is 20 C.F.R. § 404.1527(c)(2), which only applies to claims filed before March 27, 2017. Because Plaintiff filed her application for benefits on April 2, 2019, R. 437-38, that authority is inapposite here.

Instead, under the applicable regulations, the ALJ need only "articulate how we considered the medical opinions and prior administrative medical findings in [Plaintiff's] claim." 20 C.F.R. § 404.1520c(a). An "ALJ cannot reject a medical opinion without an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (quotation omitted). But neither Milligan's opinion nor the prior ALJ decisions fall under this articulation requirement. *See* 20 C.F.R. § 404.1520b(c) (noting that no explanation is necessary for evidence that is "neither valuable nor persuasive"). Milligan is a CSHM, or certified safety and health manager,[14] who provided an ergonomics evaluation for Plaintiff in November of 2014. R. 1243-44. Milligan is therefore not a medical source and offers no medical opinions. *See* 20 C.F.R. § 404.1502(d) (defining "medical source" as a licensed "healthcare worker"); *id.* § 404.1513(a)(2) (defining "medical opinion" as "a statement from a medical source"). In addition, the term "prior administrative medical findings" does not refer

---

[14] *See CSHM*, INST. HAZARDOUS MATERIALS MGMT., https://ihmm.org/cshm/ (last visited Mar. 1, 2024) (explaining eligibility requirements for certification).

to earlier ALJ decisions in the same case,[15] but to "medical findings made by a State agency medical or psychological consultant at the initial level of the administrative review process." *Id.* § 404.1513a(a)(3). The ALJ therefore committed no error by rejecting Milligan's opinion and prior ALJ decisions, or by failing to articulate why.

### F. The ALJ's Credibility Finding on Plaintiff's Subjective Symptoms Is Supported by Substantial Evidence.

Finally, Plaintiff argues that the ALJ improperly rejected her testimony about certain subjective symptoms. "The ALJ must consider the subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature." *Henderson v. Colvin*, 520 Fed. App'x 268, 275 (5th Cir. 2013) (quotation omitted). "While an ALJ's assessment of a claimant's credibility is accorded great deference," it must be supported by "substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *see also Joseph-Jack v. Barnhart*, 80 Fed. App'x 317, 318 (5th Cir. 2003) (upholding ALJ's credibility findings when "linked to substantial evidence"). Thus, an ALJ "cannot simply make conclusory statements regarding credibility," although this burden may be satisfied "by discussing the medical record and

---

[15] The Appeals Council vacated both prior ALJ decisions. R. 177-78, 202-03; *see also* 20 C.F.R. § 404.901 (defining "vacate" as "to set aside a previous action"). An ALJ's decision that has been vacated has no preclusive effect on future decisions. *See Mendez v. Saul*, No. 7:19-CV-291, 2021 WL 1217376, at *2 n.2 (S.D. Tex. Jan. 6, 2021), *adopted*, No. CV M-19-291, 2021 WL 1215842 (S.D. Tex. Mar. 31, 2021) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Furthermore, Plaintiff does not explain how the ALJ's failure to articulate how those decisions were considered was prejudicial. Moreover, despite finding Milligan's "opinion" to be "persuasive," the 2021 decision also concluded that Plaintiff could perform past work and therefore was not disabled. R. 191-92. Plaintiff's reliance on prior decisions is puzzling.

opinions." *Giles v. Astrue*, 433 Fed. App'x 241, 249 (5th Cir. 2011).

The ALJ here found that, "[d]espite alleging an inability to use her hands to perform clerical work activities," Plaintiff's "ability to perform most day-to-day activities . . . support no more than frequent manipulative limitations." R. 24-25. The ALJ also relied on activities such as Plaintiff "writing emails to her providers" and "a 5-page letter in support of her disability," returning to college to "finish[] her Associate's degree," and "a fair amount of traveling/relocating" since her alleged onset date. R. 24. Plaintiff counters that her "moving from state to state because of her husband's military service" is not evidence of non-disability. ECF No. 9 at 12. Plaintiff elsewhere contends that it took her several days to write the letter in short increments. *Id.* at 10; R. 51-52. Plaintiff thus insists that the ALJ erred in discrediting Plaintiff's testimony regarding her disabling symptoms. ECF No. 9 at 12-13.

Even if the Court agrees that Plaintiff's moving and letter-writing do not support the ALJ's credibility decision,[16] Plaintiff does not dispute that her return to

---

[16] Plaintiff relies on a Seventh Circuit opinion for the proposition that boilerplate credibility findings are "meaningless." ECF No. 9 at 12 (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014)). Even if that case was binding or persuasive authority, *Murphy* noted that the use of "boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion" where that decision is supported by "sufficient reasons, grounded in evidence in the record." *Id.* (quotation omitted). Plaintiff also compares the ALJ's reliance on her moving between states to the overturned credibility determination in *Murphy*. ECF No. 9 at 12-13. There, the ALJ noted several vacations after the claimant's stroke as suggestive of less-than-disabling symptoms. *Murphy*, 759 F.3d at 817. This was error, as a relaxing vacation in Mexico, consisting of "sunning herself on the beach while listening to smooth jazz," was hardly a "strenuous activity" and not obviously "inconsistent with her symptoms." *Id.* But this comparison is unavailing, as moving typically requires packing, loading, and unloading boxes, as well as sitting for long periods of time while driving between locations. These are all activities Plaintiff alleges

college contradicts her earlier allegations. It is apparent from the ALJ's decision that

this factual discrepancy weighed heavily against Plaintiff's credibility:

> In her disability report, the claimant stated that she had stopped working in May 2017 due to constant pain and since her family was about to move to a new duty station, she wanted to take a break from work so that her body could recover, but the recovery did not happen. Although the claimant has a documented history of pain complaints and requests for work accommodations, an April 2017 exit interview form for Kenner Army Health Clinic contrarily showed that her main reason for leaving work and requesting leave without pay (LWOP) was to continue college uninterrupted and to complete her Associate's degree in criminal law. As was her role as a service member's spouse, she had to relocate from Virginia to Texas; however, she also stated that both she and her daughter were enrolled at Texas University starting the fall of 2017 to complete their Associate's degrees and that she wanted LWOP for up to 365 days to complete her degree and go to school as a full-time student.

R. 21 (citations omitted). Plaintiff testified that she had completed "two years of

criminal justice," and she only needed to finish her prerequisites, despite not being

able to sit or type. R. 110-11, 121-23. Plaintiff fails to explain this contradiction.

Nor was this the sole discrepancy. After Plaintiff's hand surgery in 2019, she

"reported that she was happy with the results" and "most symptoms in the right

hand" were resolved. R. 22, 1358. While at the hearing, Plaintiff testified that she

"literally can't" type anymore, although her medications also alleviate any pain.

R. 122-23. The ALJ further noted that, "[c]ontrary to allegations of disabling

---

she is unable to do. At the same time, it is equally possible that Plaintiff hired a moving company or relied on family and expended relatively little effort during her moves from Virginia to Florida and then to Texas. Were this the only contradictory evidence in the record, the Court might have agreed with Plaintiff, assuming she could locate binding Fifth Circuit precedent in support.

physical impairments," Plaintiff's "medical file was sparse with sporadic treatment." R. 21. Plaintiff does not challenge that description, and she even conceded at the hearing that she had not received "any kind of significant care in the past two and a half years." R. 117. In fact, Plaintiff's records indicate that she never sought follow-up care due to a lack of insurance, and despite one attempt to obtain insurance, she "never returned" to submit the necessary documents. R. 23, 2007.

Because the ALJ fully discussed the record and noted multiple discrepancies within Plaintiff's testimony—which she does not dispute or attempt to explain—the Court finds that substantial evidence supports the ALJ's credibility findings. Because Plaintiff's alleged disability is primarily based on her unsubstantiated testimony of disabling pain, the ALJ's credibility determination is fatal to her claims.

## V.     CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 9, is **DENIED**, and the Commissioner's cross-motion for summary judgment, ECF No. 13, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on March 1, 2024.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**